**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLTON LANE, | |
| Plaintiff, | CIVIL ACTION NO. 3:14-CV-991 |
| v. | (JUDGE CAPUTO) |
| JOSEPH F. TAVARES, M.D., *et al.*, | (MAGISTRATE JUDGE SCHWAB) |
| Defendants. | |

**MEMORANDUM**

Presently before me is the Report and Recommendation ("R&R") of Magistrate Judge Schwab (Doc. 177) regarding two Motions to Dismiss (Docs. 149, 161) Plaintiff Carlton Lane's ("Plaintiff") Amended Complaint. (Doc. 139). For the reasons that follow, the R&R will be adopted in its entirety.

**I. Background**

Plaintiff filed the present Amended Complaint bringing claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution as well as statutory claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc - 2000cc-5; Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132; and Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794. Plaintiff's claims relate to his confinement at the State Correctional Institution at Huntingdon ("SCI-Huntingdon").

In his Amended Complaint, Plaintiff named eleven defendants: (1) Joseph F. Tavares, M.D., ("Tavares") a physician employed by Wexford Health Sources, Inc., a contractor for Pennsylvania Department of Corrections, and a Medical Director at SCI-Huntingdon; (2) Michael Gomes, P.A., ("Gomes") a physician's assistant, also employed by Wexford, who provided health care to prisoners at SCI-Huntingdon; (3) Paula C. Price, R.N., a registered nurse and the Corrections Health Care Administrator at SCI-Huntingdon; (4) Tabb Bickell, the former Superintendent of SCI-Huntingdon and current Acting Deputy Secretary for the Central Region of the Pennsylvania Department of Corrections; (5) Christopher Cook, a unit manager at SCI-Huntingdon; (6) Christopher H.

Oppman, the former Director of the Bureau of Health Care Services and the current Acting Deputy Secretary for Administration of the Pennsylvania Department of Corrections; (7) Angela R. Duvall, a corrections officer at SCI-Huntingdon; (8) W.M. Ritchie, a sergeant at SCI-Huntingdon; (9) Ronald Smith, a captain at SCI-Huntingdon; (10) James Eckard, former Deputy Superintendent for Facilities Management and former Superintendent at SCI-Huntingdon; and (11) the Pennsylvania Department of Corrections ("DOC"). Only two of the eleven defendants, Tavares and Gomes, have filed motions to dismiss the Amended Complaint.[1]

In her R&R, Magistrate Judge Schwab recommends that Gomes' motion to dismiss be granted, and that Tavares' motion be granted in part and denied in part. Because Plaintiff does not object to the recommendation to dismiss all claims against Gomes, (Doc. 178, at 1), the following factual summary relates to the claims against Tavares only.

Plaintiff, who was fifty-nine (59) years old at the time the Amendment Complaint was filed, sustained a gunshot wound to the abdomen in his early 20s. (Doc. 139, at ¶ 15). The gunshot injury, which is undisputed and noted in Plaintiff's prison medical records, causes him substantial loss of bladder control. (*Id.* at ¶ 16). Plaintiff manages his urinary incontinence by using "Depends," a brand of adult diapers, as well as a bedpan and a hand-held urinal bottle when hospitalized. (*Id.* at ¶ 17). Because his urinary incontinence is incurable, Plaintiff has not sought medical treatment for his condition in many years. (*Id.* at ¶ 18). Nevertheless, the medical department at SCI-Huntingdon, under the direction of Tavares, prescribes adult diapers for Plaintiff on a regular basis, as documented in Plaintiff's medical records. (*Id.* at ¶¶ 17, 18).

Given his urinary incontinence, Plaintiff often gets up during the night to change his diaper and to change his bed sheets, if they have been soiled. (*Id.* at ¶ 19). This causes noise, jostling, and odor. (*Id.*). Other prisoners find it disturbing or offensive when they are

---

[1] This is Plaintiff's second attempt to state a claim against Tavares, as I granted Tavares' motion to dismiss the original Complaint. (Doc. 138).

required to live in close proximity to Plaintiff after being assigned to share a cell with him. (*Id.* at ¶ 20). There are no covered containers in the cells and plastic bags are considered contraband; thus, Plaintiff has no means for stowing his soiled diapers and sheets. (*Id.* at ¶ 21).

When Plaintiff began to serve his life sentence in 1979, and for many years thereafter, the usual practice of DOC was to house every life-sentenced prisoner in a cell by himself. Accordingly, Plaintiff was assigned to occupy a single cell at SCI-Graterford from 1979 until 2006, without having to submit any request for single-cell placement as an accommodation for his urinary incontinence. (*Id.* at ¶ 24). In 2006, Plaintiff was transferred to SCI-Smithfield, where he was double-celled for a brief period until he was ultimately again provided with a single cell. (*Id.* at ¶ 25). Then, in May of 2012, Plaintiff was transferred to SCI-Huntingdon, where he was placed in a double cell. (*Id.* at ¶ 26).

By 2012, Plaintiff was in his late 50's, and his cell mates were often much younger. Many of them expressed their annoyance at the noise, odors, and clutter associated with Plaintiff's urinary incontinence, and, as a result, Plaintiff was subjected to harassment and intimidation. (*Id.* at ¶¶ 28, 29). Insisting that the DOC restore his single cell status, Plaintiff received a misconduct charge and disciplinary placement in the Restricted Housing Unit for resisting placement in a double cell. (*Id.* at ¶ 46).

In addition to his urinary incontinence, in recent years, Plaintiff has developed heart disease, and he experiences chest pain and shortness of breath after periods of minor exertion. Plaintiff's cardiac symptoms are episodic, but when he is symptomatic, he cannot climb a flight of stairs without difficulty and physical distress. (*Id.* at ¶¶ 30-34).

At SCI-Graterford and SCI-Smithfield, Plaintiff had attended Friday Prayers with other Muslim inmates on a regular basis. (*Id.* at ¶ 36). However, at SCI-Huntingdon, Plaintiff is often unable to attend Friday Prayers because the Muslim worship services are held in the prison's chapel, which can only be reached by climbing five flights of stairs. (*Id.* at ¶ 37).

After being placed in a double cell at SCI-Huntingdon, Plaintiff repeatedly requested restoration of his single-cell assignment, known as a "Z-code," but his requests were denied.

(*Id.* at ¶¶ 40-43).

In 2013, Corrections Health Care Administrator, Defendant Paula C. Price ( asked Tavares to evaluate Plaintiff as to Plaintiff's disability status. (*Id.* at ¶ 64). According to Plaintiff, Tavares falsely represented to Price that Tavares had already conducted a medical evaluation of Plaintiff as to Plaintiff's disabilities. (*Id.* at ¶ 65). Tavares was allegedly referring to a time when Plaintiff was called down to the medical department for a follow-up appointment for his back pain and saw Tavares who documented that Plaintiff complained about back pain. (*Id.* at ¶ 71). During that appointment, Plaintiff did not discuss his urinary incontinence because the purpose of the appointment was to seek treatment for acute back pain. (*Id.* at ¶ 72). Although Tavares did not examine Plaintiff for urinary incontinence or ask him about it during this visit, Tavares entered the following "marginal note" into Plaintiff's medical records: "Ө BM [Bowel Movement] Ө urine issues." (*Id.* at ¶ 76).

According to Plaintiff, Tavares "sought to create a false record suggesting that he had thoroughly evaluated Plaintiff as to disabilities and had determined that Plaintiff had no urinary impairment and no heart disease, and hence was not entitled to disability accommodation." (*Id.* at ¶ 83). Tavares also allegedly told Price "that if a prisoner like Plaintiff was stupid enough to get himself shot on the street and then locked up in prison, he should expect to suffer the consequences, including having to deal with his urinary incontinence on his own, and Plaintiff deserved to suffer, or words to that effect." (*Id.* at ¶ 82). In addition, Plaintiff alleges that the other defendants in this case relied on Tavares's notes as the basis for denying his requests for disability accommodations. (*Id.* at ¶ 160).

In light of the above, Plaintiff filed the instant suit alleging that Tavares knew that Plaintiff was deprived: of decent housing given his medical condition; peaceful sleep and of the use of his cell for normal activities without harassment because of the withdrawal of his "Z-code"; and access to programs and activities available to able-bodied prisoners, such as the Friday Prayers. Further, Tavares, "knew full well the indignity, emotional stress, and physical danger to which [he] subjected the elderly [Plaintiff] by forcing him to tend to his urinary incontinence in close proximity with hostile and contemptuous younger cell mates."

(*Id.* at ¶ 146). Plaintiff avers that Tavares denied his requests for accommodations for "improper and arbitrary" reasons. (*Id.* at ¶ 151).

The Amended Complaint contains eight Counts, only four of which concern Tavares. In Count I, Plaintiff claims that Tavares violated his First Amendment right to the free exercise of his religion by intentionally interfering with his attempt to gain safe access to Friday Prayers. In Count III, Plaintiff claims that Tavares violated his Eighth Amendment right to be free from cruel and unusual punishment. In Count IV, Plaintiff claims that Tavares violated his right to procedural due process by refusing to comply with DOC policies, by interfering with those policies, and by blocking his attempts to use those polices to obtain accommodations. In Count V, Plaintiff claims that Tavares violated his right to equal protection by causing him to be denied the procedures and accommodations that are routinely made available to other similarly-situated prisoners.

On July 12, 2016, Magistrate Judge Schwab issued the instant R&R (Doc. 177), recommending that Tavares' motion to dismiss be granted as to Plaintiff's Procedural Due Process claim, but denied as to all others. The R&R and the objections thereto (Docs. 178, 179) are now ripe for review.[2]

## II. Legal Standards

**1.   Review of the Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the

---

[2] Plaintiff argues that Defendant Tavares' objections were untimely and should be disregarded. Local Rule 72.3 specifies a fourteen-day period for filing objections, and Federal Rule of Civil Procedure 6(d) automatically adds three days to that period. Hence, objections to the R&R were due by July 29, 2016, as reflected in the Case Management/Electronic Case Files docketing system. As such, Defendant's objections were timely. Notably, the recent amendments to Rule 6(d), which became effective on December 1, 2016, eliminate the additional three-day period in some instances. Plaintiff's counsel, Ms. Marianne Sawicki, has already been chided by Magistrate Judge Schwab for her apparent lack familiarity with the federal courts' deadline-setting rules. (*See* Doc. 176).

extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the very least, the court should review uncontested portions for clear error or manifest injustice. *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

**2.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to

6

relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263

& n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

**1.     Defendant Tavares' Objections**

In the R&R, Magistrate Judge Schwab recommends that Taveres' Motion to Dismiss be denied in part because Plaintiff's allegations sufficiently state First, Eighth, and Fourteenth Amendment claims. (Doc. 177, at 51-52). Tavares objects. (Doc. 179).

District courts are to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). As the Third Circuit observed, "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

Here, none of Taveres' objections are sufficient to warrant a *de novo* review because they lack the specificity required by § 636(b)(1). Rather than present specific legal objections supported by applicable precedent, Tavares' brief is composed of:

(1) unnecessary commentary about Plaintiff's Complaint ("[Complaint contains a] staggering array of in the alternative factual scenarios that are dizzying inconsistent" and a "scurrilous addition") (Doc. 179, at 2, 3);

(2) unnecessary commentary about the R&R ("Report's reasoning follows a very complicated path which is hard to reconcile and does not make much sense because it is fundamentally trying to put a square peg in a round hole") (*Id.* at 5);

(3) unnecessary commentary about the opposing party ("[Defendant's arguments] clearly demonstrate that he has no real idea why that decision was made") (*Id.* at 6) ("[Plaintiff cannot make out a claim] no matter how he tries to strangle facts into an argument to make it so") (*Id.* at 7);

(4) bare and conclusory statements without any legal support or citation ("[Complaint]

8

obviously fails to satisfy the requirement. . . ") (*Id.* at 4); ("Plaintiff's claims that Dr. Tavares was deliberately indifferent to his serious medical needs by not reporting to DOC personnel that he was "disabled," does not qualify as "deliberate indifference" . . . ) (*Id.* at 6);

(5) musings ("Suppose that Plaintiff actually received what he is claiming Dr. Tavares denied to him – that Dr. Tavares said, 'yes, because of either his urinary incontinence or his heart condition, [Plaintiff] is disabled.'") (*Id.* at 7);

(6) personal opinions ("It is not the proper role of the prison's doctor to become inveigled in those issues, and it would be very problematic if he did.") (*Id.* at 9); and

(7) inconsequential hypotheticals ("If Dr. Tavares was the correctional officer standing at the door which led to all of the religious services, and let some people through but not others, based upon their religion, this claim might pass a Rule 12(b)(6) stage.") (*Id.* at 8).

Among the plethora of Tavares' digressions, commentaries, unsupported legal claims, and opinions, none of which should be included in a legal brief, his entire filing objecting to the R&R contains only two citations to cases, both in the concluding section of the brief and both wholly unrelated to any of the findings to which he objects. ("This case calls to mind the proposition that 'A doctor associated with a prison cannot be held responsible for failing to intercede in the treatment of a prisoner simply because the prisoner button-holes him and insists that he do so.' *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000); *Wright v. Genovese*, 694 F. Supp. 2d 137, 156 (N.D.N.Y. 2010).") (*Id.* at 9). It is unclear what citing these two cases, especially in the conclusion to a brief otherwise devoid of any attempts to refer to legal authority, was aimed to accomplish.

As such, Tavares' inartful objections are either unsupported or aimless, or were already thoroughly addressed by the Magistrate Judge; without making specific objections to the R&R, judicial economy demands the R&R be reviewed for clear error only. *See, e.g, Hutson v. Vaughn*, 2004 WL 717178 (E. D. Pa.2004), *aff'd*, 262 Fed. Appx. 474 (3d Cir.2008); *Cruz*, 990 F.Supp. at 377; *see also Joseph v. Sniezek*, 2016 WL 5078378 (M.D. Pa. Sept. 20, 2016); *Evans v. White*, 2016 WL 6679835, at *2 (M.D. Pa. Nov. 14, 2016).

As such, I review the R&R for clear error and find none. Magistrate Judge Schwab's

recommendations will be adopted as to claims asserted against Tavares in Counts I, III, and V of the Amendment Complaint, and Tavares' motion to dismiss will be denied as to those claims.

**2.    Plaintiff's Objections**

In the R&R, Magistrate Judge Schwab recommends that Taveres' Motion to Dismiss be granted in part because Plaintiff's Procedural Due Process allegations against Tavares fail as a matter of law. Because Plaintiff makes specific objections to this portion of the R&R, I will review it *de novo*. *See Goney v. Clark*, 749 F.2d 5, 7 (3d Cir.1984).

Count IV of the Amended Complaint alleges that Defendants deprived Plaintiff of a protected liberty interest without due process. Plaintiff claims that this asserted liberty interest encompasses:

> (1) peaceful sleep and the use of his cell for normal hygiene and other activities without harassment;
> (2) attending to his bodily functions with dignity and . . . conducting his other everyday activities in his cell without physical and verbal harassment by cell mates who express contempt toward him because of urinary incontinence;
> (3) the peaceful use of his cell for activities like personal hygiene and sleep, to which he is entitled; access to . . . a bunk, and to peaceful use of the other modest amenities and living spaces normally afforded to prisoners;
> (4) access to . . . a bunk, and to peaceful use of the other modest amenities and living spaces normally afforded to prisoners;

(Doc. 178, at 2-3). Magistrate Judge Schwab construed these assertions as stating a liberty interest in single-cell housing, which fails as a matter of law. Plaintiff, however, disagrees with that characterization of his claims. He argues that

> [t]he R&R overlooks the plaintiff's explicit descriptions of the basic liberties that he lost. The R&R focuses instead on "being housed in a single cell." R&R at 44-47. That analysis misses the mark, because it misconstrues the asserted deprivation to be merely "the revocation of [Plaintiff's] Z-Code status and his assignment to an upper bunk on an upper tier." *See* R&R at 44. That mistaken premise leads to findings that "prisoners do not have a due process right to be single-celled" and "living in a double cell is an expected ordinary incident of prison life."

Doc. 178, at 4.

Plaintiff then goes on to distinguish the cases on which the Magistrate Judge relied. However, in his efforts to argue that the Magistrate Judge mischaracterized his liberty

10

interest as confined only to his single-cell status, he never argues how his allegations ought to be characterized and fails to put forward any liberty interest theory that is supported by precedent. As such, aside from citing to cases Plaintiff believes do not apply, he never cites to a single case that he believes ought to apply. My own independent research informs me of no case which would entitle Plaintiff to assert a liberty interest based on deprivation of "peaceful sleep" or "peaceful use of his cell for reading, sleeping, and performing basic hygiene." (Doc. 178, at 8).

To state a claim under 42 U.S.C. § 1983 ("Section 1983") for a deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, a plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Id.* at 423.

I first note that I agree with Magistrate Judge Schwab's characterization of Plaintiff's allegations as revolving around Plaintiff's single-cell status. For instance, the Complaint focuses on the fact that for decades Plaintiff was assigned to occupy a single cell "without having to submit any request for single-cell placement as an accommodation for urinary incontinence." (Doc. 136, at ¶ 24). Plaintiff then characterizes his assignment to a double cell as "arbitrary" (*Id.* at ¶ 39), and argues that the change in housing constituted "a substantial and severe change in the conditions of his confinement and an abrupt alteration of the reasonable accommodation he previously had for his urinary incontinence." (*Id.*). Therefore, his current complaints of deprivation of "peaceful sleep" and harassment by cell-

11

mates (*Id.* at ¶ 141) are inextricably tied to his status as a double-celled inmate. After all, the grant of a single cell would resolve the issues. Therefore, the assignment to a single cell and Defendants' denial of Plaintiff's housing request, which Plaintiff interprets to be unreasonable given his medical condition, constitutes a change in conditions of his confinement so great that, according to him, it implicates his liberty interest. Plaintiff believes that he is entitled to a single cell because the only accommodation that would satisfy him is a single cell. He also believes that a denial of his single status is equivalent to a denial of accommodations. As such, it is not improper to characterize his procedural due process claim as asserting a liberty interest in the conditions of confinement before the change, namely, a single cell. Such claims, however, find no support in precedent. *See, e.g.*, *Rowe v. Kerestes*, 2016 WL 75069, at *2 (M.D. Pa. Jan. 6, 2016) ("[I]t is well-established that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment.").

To the extent, however, that Plaintiff's allegations are characterized as a refusal by Tavares to "comply with DOC policies, by actively interfering with those policies, and by blocking Plaintiff's attempts to use DOC policies and procedures to obtain accommodations that he needed," (Doc. 139, at ¶ 214), Plaintiff also fails to state a viable claim. While states may under certain circumstances create liberty interests protected by the Due Process Clause, prison regulations are "not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Instead, prison regulations are created to "guide correctional officials in the administration of a prison." *Id.* at 482. Federal courts must avoid "the day-to-day management of prisons" and "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id.* "Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life." *Id.* at 483. *See Olim v. Wakinekona*, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." (internal quotations, citations and footnotes omitted). *See*

*also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir.1981) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.") (quoting *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir.1977)); *Shango v. Jurich*, 681 F.2d 1091, 1101-02 (7th Cir.1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); *Rambert v. Beard*, 2012 WL 760619, at *13 (M.D. Pa. Mar. 7, 2012) ("[F]ailure to follow DOC policy does not, in and of itself, result in a violation of due process.") (citations omitted); *Hoover v. Watson*, 886 F.Supp. 410, 418 (D. Del.) *aff'd*, 74 F.3d 1226 (3d Cir. 1995) (holding that if a state elects to provide a grievance mechanism, violations of its procedures do not give rise to a § 1983 claim); *Hayes v. Muller*, 1996 WL 583180, at *7 (E.D.Pa. Oct.10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures.").

Finally, as to Plaintiff's claim that Tavares precluded him from attending Friday Prayers, (Doc. 178, at 3), such allegations reveal a misunderstanding of procedural due process. Plaintiff attended the prayers until he fell ill and could no longer attend them. No person or policy precluded him from attending his prayers; rather, his claim is that, in light of his illness, the prayers should take place in a location more accessible to him, or an elevator should be installed to allow for an easier access. Plaintiff, however, puts forward no theory explaining how such allegations constitute a deprivation without due process, and I fail to identify what process is due a person in Plaintiff's circumstances. Rather, Plaintiff's claim that he was denied the free exercise of his religious beliefs should be assessed under *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000. Under RLUIPA, a prisoner must establish that the government imposed a substantial burden on his religious exercise, *see Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir.2007), such as a prison's alleged unwillingness to provide Plaintiff with appropriate accommodations. Thus, Plaintiff's pursuit

of his claims within the framework of procedural due process is futile.

Having been deprived of no liberty interest by Tavares' alleged failure to abide by DOC policies, and having failed to put forward any viable theory supporting the allegations of deprivation of Due Process, Plaintiff fails to state a procedural due process claim. The Due Process claim against Tavares will be dismissed with prejudice.

### 3.     Magistrate Judge Schwab's Recommendations as to Defendant Gomes

Magistrate Judge Schwab recommends that all claims against Gomes be dismissed without prejudice to Plaintiff to correct the defects of the Complaint. (Doc. 177, at 51-52). Plaintiff, however, "does not object to the recommendation of dismissal of claims against [Gomes], and does not seek leave to file a second amended complaint to restate claims against Gomes." (Doc. 178, at 1). As such, all claims against Gomes will be dismissed with prejudice.

## IV. Conclusion

For the above stated reasons, I will adopt the R&R in it entirety. Tavares' motion to dismiss will be granted in part and denied in part. Specifically, Plaintiff will be allowed to proceed on his First, Eighth, and Fourteenth Amendment claims against Tavares, as articulated in Counts I, III, and V of the Amendment Complaint. However, Plaintiff's Due Process claim against Tavares will be dismissed with prejudice. Moreover, all claims against Defendant Gomes will also be dismissed with prejudice.

Finally, I encourage both parties to tone down the unnecessarily confrontational language in their filings. For the past two years, this suit has been fraught with needless bickering over font sizes used in briefs, formatting of the briefs, unwarranted objections to timeliness, and other petty objections, as well as a general accusatory tone and frequent outright hostility. The parties should focus on the merits of the case and not on their efforts to criticize, belittle, or mock the opposing side, as unfortunately has been the case. It is unacceptable for zealous advocacy to cross the line into personal animosity.

An appropriate order follows.

| | |
|---|---|
| December 7, 2016 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |