**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLTON LANE, | |
| Plaintiff, | NO. 3:14-CV-00991 |
| v. | (JUDGE CAPUTO) |
| JOSEPH F. TAVARES, MD, *et al.*, | (CHIEF MAGISTRATE JUDGE SCHWAB) |
| Defendants. | |

## **MEMORANDUM**

Presently before me are Chief Magistrate Judge Schwab's Reports and Recommendations ("R&R's") (Docs. 288, 289) regarding Motions for Summary Judgment filed by Defendant Joseph Tavares, MD (Doc. 248) and all the other Defendants (the "Commonwealth Defendants") (Doc. 245). Chief Magistrate Judge Schwab recommends that both Motions be granted in part and denied in part, as Plaintiff Carlton Lane, a prisoner, has only created genuine disputes of material fact as to some of his claims. Dr. Tavares (Doc. 291) and Lane (Docs. 290, 292) object to the R&R's. Because those objections are without merit (with one exception), I will adopt the R&R's as modified herein. The Motions for Summary Judgment will therefore be granted in part and denied in part.

## **I. Background**

The parties are familiar with the facts, so I provide here only a brief background (I will address additional facts as they become relevant to my analysis of the parties' objections). Lane was an inmate at SCI Huntingdon—he has since been transferred to SCI Phoenix. (*See* Doc. 295 at 3 & n.1). While at SCI Huntingdon, Lane filed grievances regarding a number of matters. Lane's grievances can be categorized three ways: (1) medical grievances; (2) religious grievances; and (3) attorney-client visit grievances.

First, Lane's medical grievances—Lane claims that he is disabled due to bladder incontinence and heart disease. (Doc. 1 at ¶¶ 11-21, 31-36). He filed grievances requesting

that he be placed in a cell with no cellmates, and on a lower floor. (*Id.* ¶¶ 40-58). While these grievances were pending, Dr. Tavares saw Lane regarding complaints of a sore back. (*Id.* ¶¶ 59-62). Dr. Tavares noted in Lane's medical records that Lane had no urinary issues, and ultimately opined that Lane was not, in fact, disabled. (*See id.* ¶¶ 59-68). Lane's grievances were subsequently denied by some of the Commonwealth Defendants because of Dr. Tavares's opinion that Lane was not disabled. (*Id.* ¶¶ 76-99). Thus, Lane was forced to walk up and down stairs despite his heart condition, which he maintains placed him at a substantial risk of serious injury from falling. (*See id.*)

Second, Lane's religious grievances—because of the same sequence of events, Lane was denied regular access to access to the prison chapel (which is located up a number of flights of stairs). (Doc. 246 at ¶¶ 30-53). His religion requires that he attend weekly prayer services, but his heart condition made it dangerous for him to climb the stairs to the chapel on occasion. (*See id.*). He thus stuck to prayer in his cell, discussing his religion with others, and reading religious books. (*See id.*).

Third, and finally, Lane's attorney-client visit grievances—Lane's counsel visited Lane in prison a number of times, both to discuss this case and another inmate's case (in which Lane testified as a witness). (Doc. 263-10 at 69; Doc. 289 at 23-24). The Commonwealth Defendants (Defendant Duvall in particular) allegedly directed too much of their attention to Lane and his counsel. Lane's counsel felt intimidated by Defendants. (*See* Doc. 263-9 at 54-61). For instance, counsel was recorded when she entered the visiting room, and Defendants would keep an eye on her and make sure she was seated near Duvall's desk. (*See* Doc. 263-10 at 55-90). Lane filed grievances regarding this conduct, claiming that Defendants were denying him meaningful access to his counsel and retaliating against him for exercising his rights. (*See id.*). Lane's grievances were denied.

Accordingly, Lane filed suit against Dr. Tavares and the Commonwealth Defendants,

lodging claims based on the following legal theories or causes of action: (1) Free Exercise Clause (First Amendment); (2) Free Speech and access-to-court (First and Fourteenth Amendments); (3) conditions of confinement (Eighth Amendment); (4) equal protection—both "class-of-one" and race discrimination theories (Fourteenth Amendment); (5) Religious Freedom Restoration Act ("RFRA"); (6) Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (7) Americans with Disabilities Act ("ADA"); and (8) the Rehabilitation Act ("RA"). (*See* Doc. 217 at 44-51).

After some discovery, Dr. Tavares and the Commonwealth Defendants filed Motions for Summary Judgment. (Docs. 248 and 245, respectively). Once the Motions were fully briefed, Chief Magistrate Judge Schwab issued R&R's recommending that both Motions be granted in part and denied in part. (*See* Docs. 288, 289). Lane and Dr. Tavares objected to the R&R regarding Dr. Tavares's Motion. (Docs. 290 and 291, respectively). Only Lane objected to the R&R regarding the Commonwealth Defendants' Motion. (Doc. 292). The parties' objections have been fully briefed. (*See* Docs. 290-95). The R&R's and the objections are thus now ripe for review.

## II. Legal Standards

### A. Review of the R&R's

If objections to a magistrate judge's R&R are filed, I must conduct a *de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)). I may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits me to rely on the recommendations of the magistrate judge to the extent I deem it proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas*

*v. Arn*, 474 U.S. 140, 154 (1985). At the least, courts should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.      Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant's burden is not satisfied

by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218 (quotation omitted).

### III. Discussion

**A.     Dr. Tavares**

With respect to Dr. Tavares's Motion for Summary Judgment, the parties only object to Chief Magistrate Judge Schwab's resolution of Lane's equal protection, First Amendment, and Eighth Amendment claims. (*See* Doc. 290 at 1; Doc. 291 at 1). The uncontested portions of the R&R—which recommend I grant summary judgment in Dr. Tavares's favor on Lane's other claims—contain no plain error or manifest injustice, so I will adopt those portions in full.

1. Equal Protection

I begin with Lane's objection. Lane contends that his equal protection claim should survive summary judgment because, contrary to Chief Magistrate Judge Schwab's conclusions, he did not abandon his claim, fail to give Dr. Tavares notice of it, or fail to produce supporting evidence. (*See* Doc. 290 at 2, 7).

I disagree. Reviewing the matter *de novo*, Lane's equal protection claim fails as a matter of law. In a prior R&R, Chief Magistrate Judge Schwab recommended that Lane had stated an equal protection claim under a "class-of-one" theory. (Doc. 177 at 47-50). Lane still proceeds on that theory now. (*See* Doc. 290 at 7-9). "[T]o state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Although Lane's allegations were sufficient at the pleading stage, the evidence he has produced since is insufficient to create a genuine dispute of material fact as to the first element of his class-of-one equal protection claim. For that element, Lane submits "that the

5

Department of Corrections actually houses many disabled prisoners at certain specially equipped prisons through a procedure that Lane attempted to use," and "that he is disabled and that Tavares knew it, knew of the treacherous architectural features of SCI Huntingdon, and saw Lane's formal accommodation request." (Doc. 290 at 8). Even viewing this evidence in the light most favorable to Lane, though, it does not indicate that Dr. Tavares treated Lane differently from similarly situated individuals. Put simply, Lane has failed to identify any other similarly situated individual whom Dr. Tavares treated differently—that is, any prisoner with similar (or even less severe) ailments whom Dr. Tavares treated and considered disabled. *Cf. Hill*, 455 F.3d at 239 ("Hill's claim must fail because he does not allege the existence of similarly situated individuals . . . who Marino treated differently than he treated Hill. In fact, the only other Borough employees Hill mentions in his complaint were also harassed and threatened by Mayor Marino." (citation omitted)); *Levenstein v. Salafsky*, 414 F.3d 767, 776 (7th Cir. 2005) ("Even if we credited Levenstein's testimony that numerous other individuals who were accused of sexual harassment were not suspended pending an investigation or were not investigated at all . . . this is far from a showing that these other individuals were identical to him in all relevant respects."). Accordingly, Lane has failed to back up his equal protection claim with evidence, so judgment will be entered in Dr. Tavares's favor.

2. First Amendment

I address Dr. Tavares's objections next. Lane claims that Dr. Tavares also violated the First and Eighth Amendments by "block[ing his] requested accommodations, with the intent and effect of impeding [Lane's] participation in mandatory congregational prayer services" and "with the improper purpose and effect of keeping [Lane] confined in conditions that were cruel and inappropriate . . . ." (Doc. 271 at 15, 28). Chief Magistrate Judge Schwab recommends that Dr. Tavares's Motion be denied as to these claims because he did not point "to facts showing that there is no genuine issue of trial . . . ." (Doc. Tav R&R at 31). Dr.

6

Tavares maintains that he is entitled to summary judgment on these claims because he pointed to an absence of evidentiary support in the record which Lane failed to address. (*See* Doc. 291).

Upon *de novo* review, I agree with Chief Magistrate Judge Schwab's recommendations. As for Lane's First Amendment claim, Dr. Tavares moved for summary judgment on the ground that the factor test from *Turner v. Safley*, 482 U.S. 78 (1987) (which balances First Amendment rights against penological interests) weighs in Dr. Tavares's favor. (*See* Doc. 259 at 8-14). Under the first of the *Turner* factors, "the prison has the burden of demonstrating" that "a prison's regulation is reasonably related to a penological interest." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Dr. Tavares, however, merely argued as follows: "The first Turner factor will not be assessed inasmuch as Plaintiff has not pointed to any prison regulation. That being said, Dr. Tavares is merely a physician who is not in any position to grant the accommodations requested by Plaintiff." (Doc. 259 at 8). Thereafter, Dr. Tavares addressed the rest of the *Turner* factors on the merits. (*Id.* at 8-14). In other words, Dr. Tavares failed to cite any authority indicating *Turner* is inapplicable, then addressed each of the *Turner* factors except the first factor—the one he bears the burden on. Given the Third Circuit has applied *Turner* to more than just prison regulations, *see Bieregu v. Reno*, 59 F.3d 1445, 1457 (3d Cir. 1995), Dr. Tavares has not shown he is entitled to judgment as a matter of law on Lane's First Amendment claim. That claim, therefore, survives summary judgment.

### 3. Eighth Amendment

Next is Lane's Eighth Amendment conditions of confinement claim, which Dr. Tavares also challenges as unsupported by record evidence. "To sustain an Eighth Amendment conditions of confinement claim, an inmate must establish two elements: objective proof of inadequate conditions of confinement and subjective proof of defendants' culpable state of

mind." *Spencer v. Vaughn*, No. CIV.A. 96-2420, 1997 WL 599159, at *2 (E.D. Pa. July 24, 1997) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). On the first element, "a prisoner must establish that prison officials' acts or omissions denied him 'the minimal civilized measure of life's necessities.'" *Hay v. George Hill Corr. Facility*, 349 F. Supp. 3d 463, 467 (E.D. Pa. 2018) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). And on the second element, a prisoner must establish "that the defendant[] acted with deliberate indifference" to the prisoner's health. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Lane musters the following evidence in support of his claim: Lane's requested accommodations were denied largely because of Dr. Tavares's opinion that Lane was not disabled (*see* Doc. 271 at 23-24); Lane's expert witness, a doctor who used to work at SCI Huntingdon, concluded she would have considered Lane disabled due to "multiple impairments related to his age, coronary artery disease and risk of falling[,]" (*id.* at 25); Lane's counsel testified that Dr. Tavares called her and said Lane "deserved to suffer" and "shouldn't expect to get medical accommodations[,]" (*id.* at 30); and Lane suffered a risk of falling due to the prison's layout, which Dr. Tavares was aware of (*id.* at 21). This evidence skirts the line between speculation and rational inference. It also raises a serious ethical issue for Lane's counsel. *See* 204 Pa. Code Rule 3.7. However, because it is Dr. Tavares's burden to show there is no genuinely disputed issue of material fact, and because a rational jury could infer from this evidence that Dr. Tavares subjectively intended to punish Lane with an objectively serious risk of injury from falling, Lane's Eighth Amendment claim stands. *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (injuries including "bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes"); *Wilson v. Weisner*, 43 F. App'x 982, 987 (7th Cir. 2002) (summary judgment improper where

8

inmate produced evidence he was compelled to use stairs while on crutches); *Krontz v. Westrick*, No. 3:08-CV-346, 2009 WL 2633761, at *4 (N.D. Ohio Feb. 9, 2009) (same, for inmate subject to risk of falling from shackles and long pants).

The R&R regarding Dr. Tavares's Motion for Summary Judgment will therefore be adopted in full. Lane's First and Eighth Amendment claims against Dr. Tavares stand, so Dr. Tavares's Motion will be granted in part and denied in part.

## B.     Commonwealth Defendants

Regarding the Commonwealth Defendants' ("Defendants'," for brevity) Motion for Summary Judgment, Defendants urge that I adopt Chief Magistrate Judge Schwab's R&R in its entirety (Doc. 278 at 22), and Lane lodges a few specific objections (Doc. 292). The uncontested portions of the R&R contain no plain error or manifest injustice, so I will adopt those portions in full. Judgment will therefore be entered in Defendants' favor as appropriate, and summary judgment will be denied as to "whether Lane having to use the stairs at SCI Huntingdon violated the Eighth Amendment." (Doc. 289 at 65).

Lane argues that the following claims should also survive summary judgment: (1) Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims; (2) religious freedom claims brought under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment; (3) claims relating to Lane's visits with his counsel; and (4) a claim for race discrimination under the Equal Protection Clause of the Fourteenth Amendment. (*See* Doc. 292 at 1-2). I deal with each objection in turn.

1. Disability and religious freedom claims

I address Lane's ADA, RA, RLUIPA, and First Amendment religious freedom claims

together, because the R&R recommends judgment be granted in Defendants' favor on those claims for similar reasons: that it was Lane's disability, not Defendants' actions, that caused Lane to miss religious services; and that he was not substantially burdened in his religious exercise or excluded from prison programs because he attended religious services when he was feeling well and engaged in other religious activities. (*See* Doc. 289 at 43-48, 61-64). Lane specifically objects to the R&R on the grounds that it was Defendants' refusal to provide accommodations for his heart condition that resulted in his statutory and constitutional injuries, forcing him to forgo attending mandatory religious services. (Doc. 292 at 2-14).

I agree with Lane. To maintain an ADA or RA claim, a person "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007). Defendants' argument is that Lane has failed to meet the third and fourth elements because it was his disability that caused him to not attend religious services regularly. (*See* Doc. 294 at 13). Or, as the R&R puts it, "Lane's claim that the prison should have accommodated him because he occasionally felt unable to get to the chapel is insufficient to prove a violation of the ADA or RA." (Doc. 289 at 63). But that is precisely what the ADA and RA prohibit: denying a person the benefits of services because of that person's disability. Lane's evidence indicates his claimed disability, a heart condition, sometimes prevented him from ascending the stairs to attend religious services, and Defendants refused to provide him accommodations so he could attend those services. Lane thus claims that he was "treated worse because he was disabled." *Bryant v. Madigan*,

10

84 F.3d 246, 249 (7th Cir. 1996) (distinguishing between a claim for "incompetent treatment of . . . paraplegia," which the ADA does not recognize, and a claim for "being excluded from . . . an exercise program that [one's] paraplegia would prevent [one] from taking part in without some modification of the program," which the ADA does recognize). And intermittent exclusion or denial of services is still actionable. *See Allah v. Goord*, 405 F. Supp. 2d 265, 280 (S.D.N.Y. 2005) ("Although plaintiff is not wholly precluded from participating in this service, if he is at risk of incurring serious injuries each time he attempts to take advantage of [this service,] surely he is being denied the *benefits* of this service."). Lane's ADA and RA claims thus survive summary judgment.

It is similarly true that Lane's inability to regularly attend mandatory religious services resulted in a substantial burden to his religious exercise. Under both Free Exercise Clause jurisprudence and RLUIPA, "a substantial burden exists where . . . a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Defendants' argument, adopted in the R&R, suggests that Lane's religious exercise was not substantially burdened because he was still able to attend mandatory religious services sometimes and engaged in other avenues of religious expression. But under RLUIPA, the "'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). And under First Amendment cases, namely *Turner*, "the availability of alternative means of practicing religion *is a relevant*

11

*consideration*," not the only one. *Id.* (emphasis added). Thus, because Defendants, in rejecting Lane's accommodation request, forced him to choose between risking serious injury to attend religious services and abandoning one of sincerely held religious beliefs, *cf. id.*—and because Defendants moved for summary judgment solely on substantial burden grounds—Lane's First Amendment and RLUIPA claims stand.

### 2. Claims based on Lane's visits with his counsel

Next I address Lane's claims relating to visits with his counsel. Chief Magistrate Judge Schwab recommends judgment be granted in Defendants' favor on Lane's access-to-courts and First Amendment retaliation claims because Lane has not produced sufficient evidence of actual injury or adverse action. (Doc. 289 at 56-61). Lane objects, asserting that he has produced evidence of both: that he was unable to fully prepare to testify in another case, and that Defendants took retaliatory actions against his counsel. (Doc. 292 at 19-24).

I disagree with Lane. To prevail on an access-to-courts claim, a plaintiff must demonstrate, among other things, that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "Examples of actual injury include 'missing filing deadlines or being prevented from presenting claims.'" *Denney v. Nelson*, 304 F. App'x 860, 863 (11th Cir. 2009) (quotation omitted)). And to succeed on a First Amendment retaliation claim, a plaintiff must show that he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). Assuming without deciding that Lane had a First Amendment right to testify as a non-party witness in another inmate's case, *see Gay v. Shannon*, No. CIV.A. 02-4693, 2005 WL 756731, at *8-9 (E.D. Pa. Mar. 1, 2005), *aff'd*, 211 F. App'x 113 (3d Cir. 2006),

Lane has not shown that he was prevented from testifying or was "unable to fully prepare to testify . . . ." (Doc. 247 at 30 (citing the Second Amended Complaint and Lane's deposition testimony)). Contrary to Lane's allegations, he had no problem identifying exhibits at the hearing he testified at. (Doc. 252-11 at 51-69 (transcript of Lane's testimony)). Additionally, Lane's testimony both at that hearing (*id.* at 65-66) and at his deposition in this case (Doc. 252-5 at 99-101, 113-116, 118-120) established that he was able to review his papers to prepare to testify. What remains are unsupported, speculative allegations that Defendants planted contraband (a cigarette butt) near where Lane visited his counsel and that Defendant Duvall "outright physical[ly] assault[ed]" Lane's counsel (in reality, brushed up against her (*see* Doc. 263-9 at 53-63)). (Doc. 264 at 41). A correctional officer's brushing up against a person's counsel and the presence of contraband near counsel's chair (which was removed at counsel's insistence (*see* Doc. 263-9 at 54-55)), are insufficient as a matter of law to deter a person of ordinary firmness from exercising his rights. *Cf. Mearin v. Folino*, 654 F. App'x 58, 61 (3d Cir. 2016) (defendant's standing by and smiling while plaintiff was threatened insufficient to deter a person of ordinary firmness); *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (same, for inmate's temporary placement in a cell with a faulty shower); *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 50 (3d Cir. 2013) (same, for petty harassment, "stealthy negotiating with third parties," and unpleasant public statements); *Burgos v. Canino*, 358 F. App'x 302, 306-07 (3d Cir. 2009) (same, for mere threats). Lane has failed to produce evidence that he suffered actual injury or any adverse action at Defendants' hands, so judgment will be entered in Defendants' favor on Lane's access-to-courts and retaliation claims.

### 3. Equal Protection

Finally, as for Lane's equal protection claim, Chief Magistrate Judge Schwab recommends that judgment be entered in Defendants' favor because Lane failed to exhaust this claim, among other reasons. Lane objects to this recommendation on the grounds that Defendants did not raise failure to exhaust as to this particular claim in their summary judgment motion, and that, regardless, Lane did exhaust. (Doc. 292 at 25-27).

I find Lane's objection lacking. Defendants correctly note that Lane's equal protection claim, as stated in his Second Amended Complaint, was that Defendants "created or fostered and implemented a DOC policy of placing African American prisoners and elderly prisoners at SCI Huntingdon . . . ." (Doc. 294 at 21 (quoting Doc. 217 ¶ 229)). Defendants argued in their summary judgment briefing that Lane failed to exhaust claims relating to "failure by the DOC to enact adequate policies to protect Plaintiff's rights[.]" (Doc. 247 at 18). Both Chief Magistrate Judge Schwab and Lane himself understood this as raising an exhaustion defense to Lane's equal protection claim. Lane responded in his brief in opposition that he "has sued for violations of statutory rights and constitutional rights," including rights "protected by the First, Eighth, *and Fourteenth* Amendments," and that "[*i*]*n every instance*, Lane First used the DOC's own administrative procedures to request relief." (Doc. 264 at 20 (emphasis added)). And in his objection, Lane cited to that same brief (and the evidence which it, in turn, cited) to support his argument that he exhausted. (*See* Doc. 292 at 27). Lane thus had notice and a meaningful opportunity to respond to Defendants' exhaustion defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (summary judgment may be granted "so long as the losing party was on notice that she had to come forward with all of her evidence"); *cf. Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010)

(grant of summary judgment based on an argument raised in a reply brief improper). Moreover, Lane has had a "meaningful opportunity to present arguments [and] evidence in opposition" to this issue through his objections. *Alston*, 379 F. App'x at 129. Unlike the situation in *Alston*, Lane has pointed to record evidence in his objections to avoid summary judgment, (Doc. 292 at 27), included new evidence (*see, e.g.*, Doc. 295-2), and, through his reply to Defendants' opposition to Lane's objection (Doc. 295), enjoyed more than twenty-one days to present all his arguments. *Cf. id.* at 129 n.5 (considering objections to an R&R an "[in]adequate substitute for the opportunity to directly respond" to a summary judgment argument where the plaintiff had less than twenty-one days to present objections and where the plaintiff "did not append to the objections any . . . cognizable evidence" or point to "the existence of a genuine issue of material fact"); *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) (summary judgment may be granted if the court "allows an opportunity to submit materials admissible in a summary judgment proceeding or allows a hearing").

I also agree with Chief Magistrate Judge Schwab that Lane failed to exhaust his equal protection claim. "An inmate is deemed to have exhausted his administrative remedies if he has substantially complied with the prison's administrative remedy scheme." (Doc. 289 at 27 (citing *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000))). Under the administrative scheme Lane was subject to, he needed to include in his initial grievance a "statement of the facts relevant to the claim" he was making, specifying "the date, approximate time and location of event(s) that g[a]ve rise to the grievance," and the "individuals directly involved in the event(s)." *Pressley v. Huber*, No. 3:08-CV-00449, 2018 WL 1079612, at *4 (M.D. Pa. Jan. 11, 2018) (quoting DC-ADM 804 § 1(A)(12)), *report and recommendation adopted*, No. CV

3:08-0449, 2018 WL 1077300 (M.D. Pa. Feb. 27, 2018). However, although one of Lane's grievances mentioned the Fourteenth Amendment (though in the context of disability discrimination), not one mentioned any discrimination on the basis of his race or a discriminatory prison assignment policy. (*See* Doc. 262-4 at 17-44). Failure to raise a claim in a grievance cannot exhaust that claim, regardless of its subtlety or complexity. *See Abney v. Younker*, No. 1:13-CV-01418, 2015 WL 463243, at *5 (M.D. Pa. Feb. 4, 2015) ("[a] failure to train or supervise cause of action is not 'fairly within the compass'" of a grievance that fails to mention "training or supervisory relationships"). Lane thus failed to exhaust as to his equal protection claim, so that claim will be dismissed without prejudice.

## IV. Conclusion

For the above stated reasons, Chief Magistrate Judge Schwab's R&R's will be adopted as modified herein. All unexhausted claims will be dismissed without prejudice. Judgment will be entered in favor of all Defendants on all exhausted claims brought against them in the Second Amended Complaint except the following: (1) a First Amendment Free Exercise Clause claim against Dr. Tavares, Price, Bickell, Eckard, and Oppman; (2) an Eighth Amendment conditions of confinement claim against the same; (3) a RLUIPA claim against the DOC; and (4) ADA and RA claims against the DOC.

An appropriate order follows.

| April 16, 2019 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

16